Howky, J.,
delivered the opinion of the court:
The State of Pennsylvania, on June 30, 1874, presented to the Secretary of the Treasury the ninth installment of certain war claims amounting to $100,780.45, for reimbursement under the act of July 27, 1861 (12 Stat. L., 276), on account of expenses alleged to have been incurred by the State in raising troops. Of this claim $46,074.69 were sums claimed to have been paid to various persons for the use and occupation of property by troops enrolled during the war for the service of the United States. As to these sums, payment was suspended for proof more clearly showing when the property was used and the length of time occupied and by what regiments and by what authority, and whether for State troops or for troops who were afterward mustered into the service of the United States, and also whether any part thereof was for damages to buildings or grounds.
On final presentation of the matter, additional evidence was offered showing that, in September, 1861, the Secretary of W ar had by letter conferred upon the governor of Pennsylvania discretionary power to do whatever in his judgment seemed best in preparing troops for the service of the United States. It was further stated that the vouchers on file were sustained by certain judgments rendered in various counties of Pennsylvania by which contract relations between the State *135 and the owners whose property was alleged to have been used or damaged was established for the rental value of the property.
The claim was rejected December 22, 1896, on the interpretation given by the Treasury Department to the statutes providing for the reimbursement of the States, it being held that the accounting officers could not entertain claims for damages under a rule (adopted under the act of 1861) which provided that claims growing out of the impressment of prop-ertj'- or services, and for damages done to individuals or their property, were not authorized to be paid, but that such claims must be paid, if at all, by special act of Congress if not already provided for by general laws.
The accounting officers of the Treasury have no jurisdiction to settle claims for unliquidated damages. By waj" of answer to this suggestion plaintiff in submitting the cause relied upon the proposition that the various sums of money mentioned in the vouchers were paid in satisfaction of judgments of the courts .of common pleas of Pennsylvania, rendered under the provisions of the act of the legislature of that State set forth in the findings.
Transcripts of the judgments not having been filed, and the attention of counsel being directed to the omission, it is now contended that, though the use of the term ‘ ‘ judgments ” in referring to the proceedings was’ language too broad (except as to one item, to sustain which the transcript is now filed), yet the money was paid in satisfaction of amounts certified under the provisions of an act of the legislature, and the payments should be recognized as proper, because the amount of the certificate in each item was examined by the auditor-general of Pennsylvania with the view of only making such allowances as fairly compensated the owners.
The proceedings and orders of the courts on the items were interlocutory in character and were not even binding on the accounting officers of the State. While it is conceded that the steps taken and the orders issued in the courts were not intended to bind the State’s accounting officers, yet it is further argued that when the entire proceedings were submitted to the military board for a report, the action of the State auditor-general approving the findings of the board (and upon which *136 payments of the items resulted) was judicial action, and the conclusions of that officer must be accepted as final. But this contention ignores the fact that the defendants were not parties to the proceedings in the courts of Pennsylvania. Even if those proceeding's had resulted in final judgment against Pennsylvania, the United States would not be bound by the action of the officer whose duty it was to authorize the payments.
Looking to the acts of the legislature under which the legal proceedings were instituted, the claim is for damages done to the owners of buildings and grounds, and being unliquidated damages, so far as the United States are concerned, the claim can not be adjusted in the Treasury. To the extent that the claim is for rent under an express agreement, or for use and occupation of premises under an implied contract, reimbursement would follow could the findings establish with any certainty that the items or parts of the items are within this rule. As the findings do not establish that any items of the claim are for rent or other expenses properly incurred, the accounting officers have no jurisdiction to pay.
The eighth section of the act of the Pennsylvania legislature provided for the appointment of three appraisers by the courts who, after being sworn, were required to view the premises, and after hearing evidence, to make a just and true valuation of the alleged damages for the occupation of the buildings and grounds used b3r the troops and report the sum found to be due, if any, with all the testimony to the court. The presumption is that the amounts due by way of rent for the use of the property had already been paid and that the passage of the act was intended to enable the owners of the property to have compensation for damages sustained by them during the use. There is no reason to believe that the act was intended to compensate owners for rental claims, but to do what its language purports should be done — that is, to compensate the owners of property for damages done by the troops while they were being prepared for service.
One item of the claim is founded upon the report of the appraisers for the sum of $17,000, and this report was confirmed by the court and duty certified as required by the act of the legislature. But an examination of the act upon -which *137 the judgment is founded shows that the item is for damages done to a hotel in Philadelphia. The language of the act excludes the idea that any contract, express or implied, existed for the payment of rent, or that the claim was for the rental value of the property at all.
The act of Congress of July 27, 1861, provides that — ■
“The Secretary of the Treasury be, and he is hereby, directed, out of any money in the Treasury not otherwise appropriated, to pay to the governor of any State, or to his duly authorized agents, the costs, charges, and expenses properly incurred by such State for enrolling, subsisting, clothing, supplying, arming, equipping, paying, and. transporting its troops employed in aiding to suppress the present insurrection against the United States, to be settled upon proper vouchers to be filed and passed upon by the proper accounting officers of the Treasury.”
Bjr joint resolution of Congress, approved March 8, 1862, it was declared that the above act should be construed to apply to expenses incurred as well after as before the date of the approval thereon.
It is plain that this statute authorized the governors of States to act as agents of the General Government in doing-certain specified things, viz, in “ enrolling, subsisting, clothing, supplying, arming, equipping, paying, and transporting” troops; and it is equally plain that the agency did not extend beyond the authority expressly given. It is likewise plain that the liability created by the statute goes no further. An action ex contractu could not be maintained if the enlistment of the troops had been carried out by officers of the United States; and under any interpretation given to the act of July 27,1861, the indemnity promised did not include the payment of damages to property by the wrongful act of State troops. Th'e question is not whether the expenses mentioned in the vouchers were incurred in raising troops which were subsequently mustered into the service of the United States, but whether such payments were for expenses properrl/y 'mmrred by the State. In a claim like this, originating from a violation of the State’s agreement to take care of property used by its troops, payment was properly withheld by the Treasury officials of the United States.
The motion for judgment on the claim in this court in favor *138 of the claimant under the provisions of the thirteenth section of the act of Congress approved March 3, 1881 (1 Supp. Rev. Stat., 559), is denied, and a copy of this opinion will be certified to the Secretary of the Treasury.