Howry, J.,
delivered the opinion of the court:
This is a claim for éxpenses alleged to have been incurred by plaintiff under an act of Congress approved July 27,1861, (12 Stat. L., 276), and a joint resolution approved March 8, 1862 (12 Stat. L., 615). A full history of its origin and. the causes of its rejection by the accounting officers, with reasons for denying judgment here, appear in an opinion rendered by this court (36 C. Cls. R., 131). Present consideration arises on a new trial of the mattei’s referred from the Treasury Department, supplemented with new evidence.
It is contended that the matters referred relate only to expenses incurred in raising troops which were subsequently mustered into the service of the United States. This contention ignores the rightfulness of incurring the expenditures and in addition the restriction claimed as to the scope of the inquiry is not borne out by the record transmitted. Accompanying the letter of the Secretary of the Treasury transmitting the “ vo uchers, papers, proofs, and documents” is the Comptroller’s opinion disclosing the controverted questions of fact and law upon which payment of the claim was denied for want of “proper evidence, showing what portions of the items, if any, are for rent due under contract, express or implied, and *517 sufficient to warrant the accounting officers to allow said items ” as rent. Though it is disclosed by the Comptroller that additional evidence as to the disputed point was filed, yet this testimony does not appear to have been acted upon. The question of the subsequent muster in of the troops presents a question of fact only. The legal question, the only controverted matter of law raised bj1- the accounting officers, pertained to the payment of the claim as damages done to property or as rent for its use and occupation. That is the controverted question of law which the court acted upon and must again consider preliminary to any inquiry respecting the muster of the troops into the service of the United States.
Where claims are referred to this court generally under the second section of the act of March 3, 1883 (22 Stats., 485), without inquiries which call for specific answers, and the references are accompanied with data sufficient to enable the court to determine what the controverted issues of fact and law were which operated upon the accounting officei’s to deny payment, the court will deal with the record as it is transmitted, and proceed to consider and determine every issue of law and fact necessary to the proper disposition of the matter referred.
On the former trial judgment was denied because the objections originally taken to the payment of the claim had not been removed. Those objections were stated to be that the indemnity promised by the act of 1861 did not include the payment of damages done to property by the wrongful acts of State troops. This would- be so, even though the troops were afterwards mustered into the service of the United States.
But in summarizing the matter occasion was taken to say:
“To the extent that the claim is for rent under an express agreement, or for use and occupation of premises under an implied contract, reimbursement would follow could the findings establish with any certainty that the items or parts of the items are within this rule. As' the findings do not establish that an}T items of the claim are for rent or other expenses properly incurred, the accounting officers have no jurisdiction to pay.”
It is now contended that the acts of the legislature should not have been accepted as proof that the claim was for un- *518 liquidated damages for the reason that said acts are not evidence to prove any fact at all.
As these acts were offered on the part of the State as evidence to prove the authority of the appraisers to make just and true valuation of damages alleged to have been incurred for the occupation of buildings and grounds used by the troops, complaint can not properly be made of the effect given to them in view of the original contention that the United States should not be permitted to go behind the action of the appraisers under those acts.
Again, it is contended that the court erred in accepting a part of the State’s records while rejecting other parts.
Full faith and credit to such of the State’s records as were properly authenticated has been made, but courts are not bound to accept an interpretation given to an act of a State legislature and the proceedings under such an act in the guise of a certificate of a ministerial officer of the State. The records offered do not sustain the contention that the vouchors represent other or different things than those for which payment was provided in the legislative acts mentioned. Thus, on November 10, 1896, the auditor-general of Pennsylvania certified that judgment for $17,000 for use and occupancj1' of the premises known as the “Jones Hotel,” in Philadelphia, was in full satisfaction for the rental due for the use of said premises for the purposes mentioned. But this is followed by a further certificate “that wherever the word ‘damages’is used in the warrants it was not intended to signify unliquidated damages, but only such damage as had been fully liquidated by a judgment rendered” under an act providing for the payment of damages done to property.
It has heretofore appeared that payments on judgments in the courts of Pennsylvania for damages done to property by troops were not expenses properly incurred under the act of 1861.
In certifying to certain items of the claim, January 25, 1879, the governor of Pennsylvania states that the accounts covered bjr the certificates were under the eighth section of the act approved April 16,1862, and payment was made as authorized by special acts. These special acts relate to damages provided *519 to bo paid by this eighth section, so far as we have been able to find.
Again, the warrants which constitute the vouchers presented recite generally that they were given for damages to buildings or to property, some showing on their face that they were given for damages to property by troops as adjudicated under the act of April 16, 1862, while others reciting generally that they were given for damages by occupation. They contradict the memoranda which show use and occupation, and these memoranda, being unsigned and unauthenticated, could not be taken into consideration. The final certificate, filed December 19,1900, not showing whether the use was the thing paid for, no alternative was left the court but to hold that the payments were made for the damage which the legislature authorized to lie investigated.
The material preliminary inquiry yet is whether the claim can be allowed as expenses properly incurred under the acts of Congress, supra.
The evidence taken since the first trial sufficiently shows that most of the payments made by the State were really for the uso and occupation of buildings and grounds. Some question arises in connection with the vouchers whether the payments did not include sums sufficient to compensate the owners for the wear and tear of the property occasioned by its use; that is, enough to put the buildings and grounds in the same condition they would have been but for the use by the troops.
Looking alone to the certificates which purport to represent what the records of the State show, it appears that things other than use and occupation were included in the payments. Thus the certificate of the auditor-gen eral of October 9,1900, explicitly states that wear and tear was included in the payments and enough was paid to put the property in the same condition it was before it was used. Upon this phase of the matter we should have to hold, if the certificates were all we had to rely upon, that reasonable wear and tear of property was not the subject-matter of proper charge in the absence of an express undertaking, and wanton damage to property could not be paid for by the United States under the act of 1861. But as *520 the testimony recently taken establishes a fair equivalent for use and occupation only, and defendants concede the fact, the payments made can be allowed if they represent expenses incurred in raising troops which were subsequently mustered into the service of the United States. As the record originally presented established the subsequent muster of the troops into the service, the findings which now appear are made to cover both conditions necessary to recover.
As the United States have not been estopped by the interlocutory proceedings in the courts of Pennsylvania — proceedings more nearly establishing a claim for damages done to property than a claim for rent — to inquire into the real nature of the transaction, so we have permitted the State to prove the character of the payments without standing upon the presumptions resulting from appraisements under proceedings authorizing valuations for property “damaged” by the troops of the State.
Voucher 4 is for military occupation and destruction of lumber. The destruction of property by its troops is not an expenditure for which the State can be reimbursed. Relief as to this item must be denied for want of proof showing the amount of any disbursement on account of rent.
The item of $1,054.48 covered by the voucher not presented to the treasury .within six years must also be rejected as barred by the statute of limitations.
Under the provisions of the thirteenth section of the act of Congress approved March 3, 1887 (1 Supp. Rev. Stat., 559), judgment will be entered for the State of Pennsylvania in the sum of $45,239.90.
A copy of this opinion will be certified to the Secretary of the Treasury.